UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------

EDWARD M. SULLIVAN,

        Plaintiff,

  -  against -

JEFFREY BRODSKY, ERIC KAYNE,
and MORGAN STANLEY,

        Defendants.

--------------------------------------------------

Civil Action No. 07-CV-03 (BSJ)
ECF Case

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION <u>IN LIMINE</u> TO EXCLUDE
<u>EXPERT REPORT OF DR. CAREN B. GOLDBERG</u>**

ZUKERMAN GORE & BRANDEIS, LLP
John K. Crossman (JC 7387)
Frank Welzer (FW 7159)
875 Third Avenue
New York, New York 10022
212.223.6700

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................1

STATEMENT OF FACTS ................................................................................................2

      Dr. Goldberg's Expertise .......................................................................................2

      Dr. Goldberg's Report ...........................................................................................4

LEGAL ARGUMENT.......................................................................................................8

I.  EXPERT OPINION ON STEREOTYPING IS
    ROUTINELY ACCEPTED IN DISCRIMINATION CASES ......................................9

II.  DR. GOLDBERG'S REPORT AND OPINIONS ARE RELIABLE
     AND CAN BE TESTED ON CROSS-EXAMINATION ..........................................14

    A.    Dr. Goldberg's Report is Reliable.....................................................................14

    B.    The Report Is Not Objectionable Because It Embraces
        An Ultimate Issue ...............................................................................................16

    C.    Defendants Show There Are Triable Issues Of Fact Which,
        At Most, Influence The Weight To Be Given To Testimony ............................18

CONCLUSION................................................................................................................21

## **TABLE OF AUTHORITIES**

CASES

*Amorgianos v. National R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)...............................................................................................9

*Bazemore v. Friday*, 478 U.S. 385 S.Ct. 3000, 92 L.Ed.2d 315 (1986) ......................18, 19

*Berk v. Bates Advertising USA, Inc.*, 1998 WL 726030 (S.D.N.Y. 1998).........................18

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)............................................8, 9, 18

*Davis v. Combustion Engineering, Inc.*, 742 F.2d 916 (6th Cir. 1984) ..............................17

*DiBella v. Hopkins*, 2002 WL 31427362 (S.D.N.Y. 2002) .................................................15

*Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103 (S.D.N.Y. 1989)..............................15

*EEOC v. Morgan Stanley & Co.*,
324 F.Supp.2d 451 (S.D.N.Y. 2004)
*affirmed in part* 2004 WL 1542264 (S.D.N.Y. 2004). .................................1, 11, 12, 14, 18

*Flavel v. Svedala Industries, Inc.*, 875 F.Supp. 550 (E.D.Wisc. 1994) .............................10

*Gantchar v. United Airlines*, 1996 WL 31145 (N.D.Ill. 1996)............................................9

*Heller v. Shaw Industries, Inc.*, 167 F.3d 146 (3d Cir. 1999)..............................................9

*Hnot v. Willis Group Holdings Ltd.*, 2007 WL 1599154 (S.D.N.Y. 2007) .......................10

*Hopkins v. PriceWaterhouse*, 825 F.2d 458 (D.C. Cir. 1987) *affirmed
in part, reversed in part on other grounds* 490 U.S. 228 (1989).........................10, 11, 15

*Howard v. Walker*, 406 F.3d 114 (2d Cir. 2005) ................................................................19

*Hurst v. F.W. Woolworth Co.*, 1997 WL 685341 (S.D.N.Y. 1997).........................1, 9, 19

*Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992) .....................................................................18

*International Healthcare Exchange v. Global Healthcare*,
470 F.Supp.2d 345 (S.D.N.Y. 2007).....................................................................10, 14, 17

ii

*Intimate Bookshop Inc. v. Barnes & Noble, Inc.,*
2003 WL 22251312 (S.D.N.Y. 2003).................................................................13

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167,
143 L.Ed.2d 238 (1999) .......................................................................9, 14

*Oubre v. Entergy Operations, Inc.,* 1998 WL 684154 (E.D.La. 1998) ...............................9

*Raskin v. Wyatt Co.,* 125 F.3d 55 (2d Cir. 1997)................................................12

*Robinson v. Jacksonville Shipyards, Inc.,*
760 F.Supp. 1486 (M.D. Fla. 1991)................................................................10

*Rowe Entertainment, Inc. v. William Morris Agency, Inc.,*
2003 WL 22272587  (S.D.N.Y. 2003)........................................................ 12, 13

*Runnels v. Texas Children's Hosp. Select Plan,*
167 Fed.Appx. 377, 2006 WL 189939 (5th Cir. 2006).......................................18

*Schwab v. Phillip Morris USA, Inc.,* 449 F.Supp.2d 992 (E.D.N.Y. 2006).......................10

*United States v. Jakobetz,* 955 F.2d 786 (2d Cir. 1992) ....................................10

*U.S. v. Dorsey,* 45 F.3d 809 (4th Cir. 1995) ....................................................12

*Zaremba v. General Motors Corp.,* 360 F.3d 355 (2d Cir. 2004) ....................................12


RULES

Local Rule 56.1 (a) ...........................................................................................1

Fed. R. Evid. Rule 403......................................................................................14

Fed. R. Evid. Rule 702.................................................................................15, 18

Fed. R. Evid. Rule 704.................................................................................16, 17

iii

Plaintiff Edward M. Sullivan, by his attorneys, submits this memorandum of law in opposition to Defendants' motion in limine to exclude the expert report of Caren B. Goldberg, Ph.D.

## **PRELIMINARY STATEMENT**

In the present motion, defendants Jeffrey Brodsky, Eric Kayne and Morgan Stanley (collectively, "Morgan Stanley") again attempt to overwhelm and out-resource Edward Sullivan by filing yet another phone-book-sized motion.[1] This time, Morgan Stanley suggests that in deciding the pending motion for summary judgment, this Court should ignore the opinion of an indisputably qualified expert in the field of ageism and age stereotyping. Morgan Stanley makes this motion despite the overwhelmingly clear precedents recognizing that such expert testimony is valuable and admissible.

Dr. Caren Goldberg's expert report and opinions were incorporated into the record through Dr. Goldberg's Declaration, filed on April 4, 2008, in connection with plaintiff's opposition to defendants' pending motion for summary judgment.

Morgan Stanley's motion to exclude Dr. Goldberg's expert report should be denied for the following two reasons: *First*, expert testimony on stereotyping is widely accepted and routinely admitted in evidence. This Court has recognized the valuable role that expert opinion on stereotyping serves in employment discrimination cases. *Hurst v. F.W. Woolworth Co.*, 1997 WL 685341, * 2-3 (S.D.N.Y. 1997) (Haight, J). Moreover, this Court has rejected previous efforts by Morgan Stanley to exclude expert opinion on how stereotyping has affected employment decisions at Morgan Stanley. See *EEOC v.*

---

[1]    For example, in connection with Defendants' Motion for Summary Judgment, notwithstanding that Local Rule 56.1 (a) requires the Rule 56 statement to be "short" and "concise," and contrary to Rule 1 which requires that the rules be administered to secure the just, speedy and inexpensive determination of every action, the Morgan Stanley burdened Plaintiff with a thirty-five page statement containing two-hundred twenty-nine (229) purported "facts."

*Morgan Stanley & Co.*, 324 F.Supp.2d 451, 462 (S.D.N.Y. 2004). **Second**, Dr. Caren Goldberg is a well-qualified professor who is exceptionally well-prepared to assist the trier of fact to understand this social science, and the ageist significance of documentary and testimonial evidence. As established in settled caselaw -- none of which was cited by Morgan Stanley -- Morgan Stanley's differing view of the evidence, at most, constitutes fodder for cross-examination. The trier of fact will evaluate the termination of a 25-year veteran of Morgan Stanley in the wake of, among other things, a doctored performance review and ageist statements by Mr. James Gorman, who did the firing. These factual issues cannot be determined without trial.

## STATEMENT OF FACTS

Dr. Goldberg's Expertise

Dr. Caren Goldberg is an expert in older worker stereotypes and age discrimination. As set forth more fully in her curriculum vitae,[2] for more than ten (10) years, Dr. Goldberg has taught undergraduate, masters and doctoral level courses in Human Resource Management, Organizational Behavior and Research Design at George Washington University and American University. She has written more than 50 articles for peer-reviewed journals and conferences, over 20 of which focused partly or completely on decisions about older workers. Dr. Goldberg has also authored three invited book chapters, two of which addressed age discrimination. Her scholarly articles in the area of stereotyping and age discrimination include:

---

[2]     Dr. Goldberg's curriculum vitae is attached to her Expert Report, which is attached to her Declaration filed on April 4, 2008 (Dkt. 35). True copies of Dr. Goldberg's Declaration and Expert Report are attached as Exhibit A to the accompanying Declaration of Frank Welzer.

- Goldberg, C.B. (2007).  Work and organizational issues in the retention of older employees.  Symposium at the Society of Industrial/Organizational Psychologists conference, New York, NY.

- Goldberg, C., Perry, E.L. & Finkelstein, L.M. (2006).  Targeting older applicants in recruitment:  An organizational perspective.  Presented at the Academy of Management Conference, Atlanta, GA.

- Goldberg, C., & Stone, D. (2001).  Older workers and disabled workers: A look at two underutilized groups.  Coordinator of symposium presented at the Academy of Management Conference, Washington, DC.

- Goldberg, C., Finkelstein, L., Perry, E., & Konrad, A. (2001).  Age and career progress:  Tests of simple and moderated effects.  Presented at the Academy of Management Conference, Washington, DC.

- Cleveland, J. N., Shore, L.M., & Goldberg, C. (2000).  Work attitudes and performance as a function of manager age, employee age, and their interaction.  Presented at the Society of Industrial/Organizational Psychologists conference, New Orleans, LA.

- Goldberg, C. & Shore, L.M. (1998).  The impact of applicant age and the ages of referents on recruiters' decisions.  Presented at the Society for Industrial/Organizational Psychologists Conference, Dallas, TX.

- Goldberg Sharak, C., & Shore, L. M. (1995).  Age stereotypes and new hire performance ratings.  Presented at the Southern Management Association conference, Orlando, FL.

- Goldberg Sharak, C. & Shore, L.M. (1994).  Measuring age context:  A comparison of two approaches.  Presented at the Academy of Management Conference, Dallas, TX.

Dr. Goldberg's research has been published, among other places, in *Journal of Applied Psychology*, *Human Resource Management*, *Group and Organization Management*, *Journal of Organizational Behavior*, *Journal of Career Planning and Development*, and *Journal of Managerial Psychology*.[3]

---

[3]     Copies of some of Dr. Goldberg's articles on age discrimination are attached to the Welzer Declaration as Exhibits H to L.

Dr. Goldberg has a B.A. in Psychology, an M.B.A., and a Ph.D. in Management.  Her doctoral dissertation explored the impact of age stereotypes on applicant assessments.  She has covered discrimination in her undergraduate and masters level Introduction to Human Resources courses, her undergraduate Cases and Exercises in Human Resources Management courses, her masters level Human Resources/Organizational Behavior survey courses, her masters level Performance Management and Development courses, and her Ph.D. Seminar in Human Resource Management.  In addition, she has covered the topic of discrimination in several off-campus Accelerated MBA and Executive MBA courses that she has taught, as well as in training modules that she designed and delivered for the Center for Excellence in Public Leadership and the Council of Governments.  Dr. Goldberg has also conducted several media interviews, including a *Dateline, NBC* story on age discrimination in the workplace.

Dr. Goldberg's Report

Dr. Goldberg is well-qualified to assist the trier of fact in understanding the evidence and the relationship between that evidence and the established principles and findings from social science research about how age stereotypes play a factor in the workplace, how to identify the presence of such stereotypes, and how, in Dr. Goldberg's opinion, they played a factor in connection with Morgan Stanley's termination of Edward Sullivan.

For example, Dr. Goldberg explains that the link between ageist stereotypes and age discrimination is well-documented in studies that have been published in some of the most highly-respected journals in the field of Human Resources.  (Report, p. 3).  The

- 4 -

research indicates that age stereotypes translate to age discrimination when, as in this case, the organizational culture supports ageism, when decision-makers are cognitively busy, when limited information is available about the target individual, when older target individuals are being directly compared to younger individuals, when the target individual's age violates an age norm, when the requirements of the job are associated with youth-based stereotypes, and when the decision-maker values attributes associated with youth. (Report, p. 4).

Dr. Goldberg explains that stereotypes are judgments about an individual based on his/her membership in a particular group, and that adaptability and physical performance capacity are commonly held stereotypes of older workers. Research on older worker stereotypes indicates that people view older workers as being less flexible, less adaptable, less trainable, less interested in technological change, less energetic, and more difficult to get along with than their younger counterparts. This explanation will help the trier of fact understand the testimony in this case and the ways in which that testimony reveals the presence of ageist stereotyping and prejudice:

- Throughout the deposition transcripts, comments relating to these ageist stereotypes came up repeatedly with numerous references being made to a "continuous learning environment," "driving change," "embracing change," "adapting," and being "energetic." (Report, pp. 4, 12).

- At his deposition, Morgan Stanley's President James Gorman -- who fired Mr. Sullivan -- testified that his assessment of Mr. Sullivan was based on his judgment of Mr. Sullivan's adaptability and physical performance capacity. Gorman based his assessment of Mr. Sullivan on Gorman's judgment of Mr. Sullivan's adaptability and physical performance (including that: "My judgment call as to who could…get the job done;" "one makes subjective judgments based upon how well you think somebody can adapt;" "my judgment was that he would not adapt as well. And I …wasn't looking for people to adapt as well. I was looking for people to adapt at an extraordinary level… Ed was not even close to that level in my opinion."). (Report, p. 7).

- Mr. Gorman further testified that he did not feel that Mr. Sullivan (55) was likely to have the level of energy required to be a regional director. (Report, p. 12).

Dr. Goldberg explains that by definition, an age stereotype is a subjective judgment that some people make in a rapid-fire manner about an individual based on his or her age, which is what Dr. Goldberg opines happened here:

- Mr. Gorman openly admitted to forming "rapid-fire points of view," making "subjective judgments," and using his "instinct" in deciding to terminate Mr. Sullivan. (Report, p. 3).

- At deposition, Mr. Gorman made twelve references to relying on stereotypes in making the decision to terminate Mr. Sullivan. (Report, p. 7).

- Mr. Gorman was unable to recall specific facts that led to his judgment that Mr. Sullivan would be unable to get the job done and be unable to adapt. Instead, his decision to terminate Mr. Sullivan was based on "rapid points of view," "instinct," "gut instinct," "judgment," "subjective judgment," "a judgment call," "my own judgment," "bits of information that were circling around in my head," "what I felt," "subjective judgments," "a point of view," and "my judgment." This is indicative that his decision to terminate Mr. Sullivan was based on ageist stereotypes, rather than on performance. (Report, pp. 7, 17, 24).

Dr. Gorman explains that the scholarly literature on stereotyping indicates that seven conditions present here make ageist stereotypes more prevalent and more likely to result in negative actions against older workers. (Report, pp. 4-5). These conditions, in which age stereotyping commonly flourishes, include that:

- The culture at Morgan Stanley was accepting of public derogatory remarks about older workers, including, for example, that it was acceptable for a regional director to publicly state "let's let the old guy get up to the front of the line" and for the president to announce in a public address that he wanted to "ensure that young people are given an opportunity," and that e-mail exchanges between top level executives praise the relative youth of a regional director candidate with the same weight as his performance as an area manager. (PX 58)(Report, pp. 3-5, 18).

- Morgan Stanley was in what Mr. Gorman referred to as a "crisis situation" when he took the helm. (Report, pp. 4-5, 19).

- Mr. Gorman made his decision to terminate Mr. Sullivan after only limited exposure to him and, per Dr. Goldberg's calculations, after spending only 60-70 minutes engaging with him. (Report, pp. 4-5, 19-20).

- During the two face-to-face meetings Mr. Gorman had with Mr. Sullivan, Mr. Sullivan was being directly compared to younger employees with whom he was ultimately competing to retain his employment at Morgan Stanley. (Report, pp. 4-5, 20-21).

- Mr. Gorman was considerably younger than Mr. Sullivan, which violates the norm of a supervisor being older than his/her subordinates. (Report, pp. 4-5, 21).

- The perceived requirements of the job articulated by Mr. Gorman (energy, adaptability, ability to drive change) were consistent with youth-based stereotypes. (Report, pp. 4-5, 22-23).

- Mr. Gorman repeatedly indicated that he values these same attributes (energy, adaptability, ability to drive change) that are associated with youth. (Report, pp. 4-5, 22-23).

Dr. Goldberg opines that the prevalence of the above seven factors, the ageist stereotypes expressed, and Mr. Gorman's acknowledgment of having relied on ageist stereotypes in deciding to terminate Mr. Sullivan leads her to the ultimate opinion that Mr. Sullivan was terminated because of his age. (Report, p. 5).

Dr. Goldberg opines that there are other concrete illustrations of how age stereotyping discrimination affected the decision-making process at Morgan Stanley, ultimately including the decision to terminate Mr. Sullivan, including that:

- Although Mr. Sullivan's 360 degree performance evaluation (PX 4, p. 00493) was objectively more favorable than that of his colleague, Ms. Stillwell's (PX 42, p. 001916), and Mr. Sullivan and Ms. Stillwell (who was 45) were placed in the same box on the talent grid (PX 25) which was provided to Mr. Gorman, Mr. Sullivan, who was 55, was terminated, while Ms. Stillwell, who was considerably younger, was not. (Report, pp. 2-3).

- Mr. Sullivan was not provided with the same developmental opportunities as the younger, but similarly-performing Ms. Stillwell was, and that in particular, whereas Ms. Stillwell was provided with executive coaching to improve her performance, Mr. Sullivan was not. (Report, pp. 3, 8).

As set forth above and in her <u>curriculum</u> <u>vitae</u>, Dr. Goldberg is also an expert on human resources management, specifically in areas of diversity and discrimination as well as sexual harassment.  Based on this expertise, in her report, Dr. Goldberg also opines upon faults of Morgan Stanley's human resources executives.  For example, Dr. Goldberg concludes that Morgan Stanley's human resources department conducted an inadequate sex harassment investigation in the situation in which defendants seek to blame plaintiff for delaying the termination of the accused by 24-hours so that he could have a face-to-face interview with him.  (Report, pp. 15-16).  Dr. Goldberg also explains the scholarly literature concerning intentional negative distortions of performance appraisals, and concludes that the human resource executives deliberately downgraded Mr. Sullivan's performance evaluation with the intention of creating a falsified paper trail for the firing.  (Report, pp. 23-24).

## **LEGAL ARGUMENT**

Federal Rule of Evidence 702 provides that "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Morgan Stanley claims that a court must find reliability as to each of the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d

469 (1993) factors in a methodical fashion and that the opinion is inadmissible "[i]f any of these factors cannot be met" (Def. Br., p. 19), it is clear, even in the cases relied upon by Morgan Stanley, that there is no bright-line exclusionary rule and that the testimony must be evaluated "practically" and "flexibly." *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 154-155 (3d Cir. 1999). The factors listed by Morgan Stanley "do not constitute, however, a 'definitive checklist or test.'....Rather, '[t]he inquiry envisioned by Rule 702 is...a flexible one, ...and 'the gatekeeping inquiry must be tied to the facts of the particular case." *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002), *citing Daubert*, 509 U.S. at 593, 594 and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

## I.

### EXPERT OPINION ON STEREOTYPING IS ROUTINELY ACCEPTED IN DISCRIMINATION CASES

It is well-recognized by Federal Courts throughout the country that age discrimination, which typically involves unconscious stereotyping, is an appropriate subject matter for expert testimony. *Hurst v. F.W. Woolworth Co.*, 1997 WL 685341, * 2-3 (S.D.N.Y. 1997) (Haight, J.) (denying employer's motion to preclude plaintiff's expert on age stereotypes and the presence and effect of age stereotypes in the workplace); *Oubre v. Entergy Operations, Inc.*, 1998 WL 684154, * 3 (E.D.La. 1998) (expert qualified to evaluate employer's performance appraisal system, to opine on whether it fostered negative age stereotyping, and to explain why the expert came to that conclusion); *Gantchar v. United Airlines*, 1996 WL 31145, * 4 (N.D.Ill. 1996) (plaintiffs offered expert testimony to demonstrate that employer applied age-based stereotypes to exclude plaintiffs); *Flavel v. Svedala Industries, Inc.*, 875 F.Supp. 550, 558 (E.D.Wisc.

1994) ("age discrimination 'may simply arise from an *unconscious* application of stereotyped notions of ability rather than from a deliberate desire to remove older employees from the workforce' (citation omitted)...Expert testimony on age stereotyping would make jurors aware of this fact in evaluating the evidence."); *Flavel v. Svedala Industries, Inc.*, 1994 WL 761447, * 3 (E.D.Wisc. 1994) (stating that age stereotyping expert's "area of study is recognized throughout the scientific community and by courts generally in all types of discrimination cases.").

Expert testimony on stereotyping has been admitted in cases involving many forms of employment discrimination. *International Healthcare Exchange v. Global Healthcare*, 470 F.Supp.2d 345, 355 (S.D.N.Y. 2007) (denying motion to strike expert's report on gender stereotyping); *Hnot v. Willis Group Holdings Ltd.*, 2007 WL 1599154, * 2-3 (S.D.N.Y. 2007) (denying motion to exclude testimony of gender discrimination expert concerning the operation of gender stereotyping, the conditions under which such stereotyping commonly flourishes, and identifying particular circumstances present in the evidence as consistent with the stereotyping phenomena)[4]; *Robinson v. Jacksonville Shipyards, Inc.*, 760 F.Supp. 1486, 1502 (M.D. Fla. 1991) (expert witness on sexual stereotyping); *Hopkins v. PriceWaterhouse*, 825 F.2d 458, 467 (D.C. Cir. 1987) (affirming District Court's finding of discriminatory sexual stereotyping based on

---

[4]    The *Hnot* Court concluded that "[i]t is permissible for an expert to illustrate general principles by reference to evidence in the record," although it states in dicta that the expert should not undertake to tell the jury what to think about the particular facts of the case. *Hnot* at * 3, citing *Schwab v. Phillip Morris USA, Inc.*, 449 F.Supp.2d 992, 1134 (E.D.N.Y. 2006) ("Freely admitted is expert testimony that is likely to substantially assist the average person in understanding the case – even if it simply explains facts and evidence already in the record"). "It will of course be up to the jury to decide whether that evidence is credible, to determine the facts to which the expert purports to apply his expertise, and to assess the credibility of the expert's claim that the theory fits the circumstances of the case." *Id.*, citing *United States v. Jakobetz*, 955 F.2d 786, 797 (2d Cir. 1992) (rejecting the assumption that a jury in this district "will be so dazzled or swayed" by expert testimony "as to ignore [contradictory] evidence.").

testimony of an expert in the field of stereotyping, despite defendant's claims that such testimony was "sheer speculation" and of "no evidentiary value"), *affirmed in part, reversed in part on other grounds* 490 U.S. 228, 255-256 (1989) (Supreme Court affirmed finding that the evidence including expert testimony was sufficient to establish role of gender stereotyping).

Morgan Stanley has previously raised -- and lost -- the very same type of motion to exclude testimony about stereotyping in a discrimination case. The case, which is not cited in Morgan Stanley's motion, is entitled *EEOC v. Morgan Stanley & Co.*, 324 F.Supp.2d 451 (S.D.N.Y. 2004), *affirmed in part* 2004 WL 1542264 (S.D.N.Y. 2004). In *EEOC v. Morgan Stanley*, Morgan Stanley claimed that a social scientist should be excluded as an expert at trial because he lacked first-hand knowledge because he based his opinions on deposition testimony, and further objected that the expert's opinions were "based on subjective views." *EEOC v. Morgan Stanley, supra*, 324 F.Supp. 2d at 461. As it tries to do again here, Morgan Stanley also claimed that in *EEOC*, the expert's opinions were "unreliable" and criticized his methodology as without scientific basis and omitting inconsistent literature. *Id.* Finally, Morgan Stanley claimed the expert's opinion was inadmissible because those opinions supposedly would supplant the role of counsel by arguing that discrimination existed and the role of the jury by assessing the credibility of testimony. *Id.* at 461.

The Court disagreed with Morgan Stanley. The Court held that the expert "may properly testify about gender stereotypes, and how these stereotypes may have affected decisions at Morgan Stanley." *Id.* at 462. The Court stated "Morgan Stanley's critiques of [expert's] testimony, including that he does not rely on first-hand knowledge or

studies, that his opinions are subjective, that a social framework methodology is not accepted, and that he omits inconsistent literature, are factors that should be evaluated and weighed by the trier of fact." *Id.* at 461-462.[5]

Morgan Stanley's cases are distinguishable. First of all, not a single one of these cases concern an expert in stereotyping. In *Zaremba v. General Motors Corp.*, 360 F.3d 355 (2d Cir. 2004), the court excluded expert testimony concerning a safer, hypothetical alternate design of a Trans Am sports car as having "no concrete basis in reality" because, among other things, the purported expert had not tested his design and "[n]umerous courts have excluded expert testimony regarding a safer alternative design where the expert failed to create drawings or models or administer tests." *Id.* at 358. In *U.S. v. Dorsey*, 45 F.3d 809 (4th Cir. 1995), the Court excluded testimony from defense witnesses in the field of forensic anthropology who were to have "compared photographs" and opine that a defendant was not the same person seen in a bank surveillance photographs of a robbery, primarily on the grounds that the expert was "introduced merely to cast doubt on the credibility of other eyewitnesses," which is a determination "usually within the jury's exclusive purview," and that because of late notice, the government had not been afforded a meaningful opportunity to obtain its own expert. *U.S. v. Dorsey*, 45 F.3d at 813, 815. *Raskin v. Wyatt Co.*, 125 F.3d 55, 67 (2d Cir. 1997), did not concern an expert in stereotyping; instead, it concerned a statistics expert, whose statistics artificially inflated average ages. *Id.* In *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 2003 WL 22272587, * 7 (S.D.N.Y. 2003), the Court

---

[5]    The Court did prohibit the expert from discussing his theories regarding whether the subject Morgan Stanley unit's "'arbitrary and subjective' pay and promotions procedures, in conjunction with a male-dominated workplace, result[ed] in discrimination." *Id.* at 462. But that was because the Court concluded that the testimony would tend to confuse the jury about the burden of proof. *Id.* Morgan Stanley makes no such argument here.

concluded that a purported expert's "conclusion" of "institutionalized discrimination in the United States concert promotion industry is not relevant to the issues in Plaintiffs' case and would only serve 'to interject substantial unfair prejudice into the case' and confuse the jury by directing its attention from the issues in this case." There, the purported expert's resume did not show a relevant academic background, his report did not contain or rely upon any original sociological research, and he based his opinion on allegations in the Amended Complaint and on limited depositions. *Id.* Finally, in *Intimate Bookshop Inc. v. Barnes & Noble, Inc.*, 2003 WL 22251312 (S.D.N.Y. 2003), an expert's lost profit testimony was found to be speculative where the expert admitted that he could not establish any causal link between the lost sales and profits and defendants' alleged conduct and their damages calculations and opinions were based on an assumption that the defendants' alleged misconduct was the sole cause of plaintiff's lost sales profits. *Id.* at * 6. Accordingly, each of these authorities is inapposite in the present case.

It is clear that stereotyping exists in the workplace, that Dr. Goldberg's methods for assessing stereotyping are well-established and appropriate, and that Dr. Goldberg's identification and analysis of evidence consistent with stereotyping in this case will be valuable and helpful to the trier of fact. Dr. Goldberg's report specifically lists no less than twenty-one (21) scholarly articles supporting her opinions, which references are made throughout her report.

## II.

## DR. GOLDBERG'S REPORT AND OPINIONS ARE RELIABLE AND CAN BE TESTED ON CROSS-EXAMINATION

A.    Dr. Goldberg's Report Is Reliable

"The trial court possesses flexibility in determining what are reasonable measures

of reliability." *EEOC v. Morgan Stanley*, *supra*, 324 F.Supp.2d at 456, citing *Kumho*

*Tire Co.*, *supra*, 526 U.S. 137. "[T]he trial court's focus regarding admissibility must be

'solely on principles and methodology, not on the conclusions that they generate.'"

*EEOC v. Morgan Stanley*, 324 F.Supp.2d at 456 (citations omitted).

Morgan Stanley's efforts to keep the Court from considering the opinions of a

stereotyping expert is the same as those of the employer in *International Healthcare*

*Exchange v. Global Healthcare*, *supra*, 470 F.Supp.2d 345 (S.D.N.Y. 2007) (Swain,

D.J.). There, in a Title VII claim for gender discrimination, the employer moved for

summary judgment. When the plaintiff included with its opposition a report by and

expert in gender stereotyping, the employer sought to strike the report on the grounds,

inter alia, that the report was "unreliable" as the expert did not analyze "all of the

evidence," and that it would not be helpful to the fact finder, and, finally, that it should be

stricken per Fed. Evid. Rule 403. The Court disagreed and denied the employer's motion

to strike the report. The Court noted that that the report of that expert, like Dr.

Goldberg's report, detailed theories and the state of research concerning stereotyping and

the expert's opinion based on the record, "that [p]laintiff's work assignments and

termination were the product of such stereotyping." *Id*. at 355. The Court stated that the

employer's assertion that the report was "unreliable" because the expert did not review

"pertinent record evidence" and "neglected to consider alternate explanations" for the

employer's action "are issues that do not so undermine the reliability of [expert's] report as to warrant its rejection pursuant to Rule 702, nor do they raise such issues or unfair prejudice as to outweigh the probative value" of the report.  *Id.*

Similarly, in *Hopkins v. PriceWaterhouse*, 825 F.2d 458, 467 (D.C. Cir. 1987), the Court of Appeals for the D.C. Circuit affirmed a District Court's consideration of expert opinion on gender stereotyping notwithstanding the fact that the expert did not meet the plaintiff and based her entire testimony on written documents, finding it "quite clear that experts in her field do not require such data in order to determine whether stereotyping is occurring in a given employment context."  *Id.* at 467.

Morgan Stanley does not cite a single case in which a stereotyping expert's opinion was excluded.  Instead, they cite to clearly distinguishable cases, such as *DiBella v. Hopkins*, 2002 WL 31427362 (S.D.N.Y. 2002), where the purported business ethics expert's report did not explain business ethics, but assessed witness credibility and asserted that plaintiff acted "unethically," and was found to be not helpful to a defamation and quantum meruit case.  Also inapposite is *Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103, 140 (S.D.N.Y. 1989).  There the Court granted summary judgment and dismissed plaintiff's Rule 10b-5 claims regarding allegedly false forecasts where plaintiff merely relied upon an expert's opinion that sales projections were not based on a reasonable method of preparation, because "Rule 10b-5's scienter requirement demands that the method of preparing the projections be so egregious as to render their dissemination reckless," and the expert's conclusions did not concern "the essential fact," i.e., whether the manner of preparation was egregious.  *Id.*  Morgan Stanley cites *Estate of Detwiler* for the proposition that:  "courts have recognized that summary judgment is

- 15 -

appropriate where the nonmoving party relies solely on an expert opinion that is not
based upon specific facts ... or that makes unsupported assumptions or ignores important
facts." However, Dr. Goldberg's report cites to the record in great detail, and Morgan
Stanley does not cite any specific evidence that it contends Dr. Goldberg did not
consider.

Instead, Morgan Stanley blithely asserts that Dr. Goldberg should have considered
the "over 6,000 pages of hard copy documents, in addition to over 100,000 e-mails and e-
mail attachments in electronic form" that Morgan Stanley claims were produced in this
case. (Def. Brief, p. 8). As for Morgan Stanley's efforts to cast aspersions on the fact
that Dr. Goldberg received copies of certain deposition transcripts and exhibits from
plaintiff's counsel, how else was she supposed to get them? Moreover, Morgan Stanley
misstates Dr. Goldberg's deposition testimony concerning the materials that she
reviewed. Morgan Stanley fails to cite to the pages from Dr. Goldberg's deposition
testimony in which she testified that she did receive all of the exhibits to the deposition
transcripts she reviewed, including: "I subsequently did get all of the exhibits." (Dr.
Goldberg dep. tr., Exhibit B to Welzer Declaration, at pp. 118-121). Morgan Stanley also
ignores Dr. Goldberg's testimony that she asked for and received information from the
record. (Dr. Goldberg dep. tr., Exhibit B to Welzer Declaration, at pp. 99-100).

B.      The Report Is Not Objectionable Because It Embraces An Ultimate Issue

Per Federal Rule of Evidence 704 (a), "testimony in the form of an opinion or
inference otherwise admissible is not objectionable because it embraces an ultimate issue
to be decided by the trier of fact." Fed. R. Evid. 704 (a). The Advisory Committee notes
indicate that FRE 704 specifically abolished the "ultimate issue" rule, which restricted

expert witnesses from expressing opinions on ultimate issues, because that rule was "unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information."[6]

Expert opinions which embrace an ultimate fact, i.e. the presence of age discrimination, are within the ambit of Rule 704 and admissible. *Davis v. Combustion Engineering, Inc.*, 742 F.2d 916, 918-919 (6th Cir. 1984). In *Davis*, despite defendant's assertion that the age discrimination expert's conclusions had "usurped the function of the court and unfairly and irreparably influenced the jury's decision," the Sixth Circuit found no fault in the trial court's admission of testimony that: (i) "in this case there was an unconscious bias and [plaintiff] was terminated because of his age"; (ii) "[plaintiff] appears to be discriminated against and ... that age was a factor that determined his termination"; and (iii) "I find that the fact that [plaintiff] was discharged very, very singly [sic], and the only difference between him [sic] was age. Must be somehow a question of age in the discharge of [plaintiff]." *Id*. at 918.[7]

Accordingly, Courts have declined to exclude expert opinion that an employer acted on the basis of stereotypes. *International Healthcare Exchange v. Global Healthcare*, *supra*, 470 F.Supp.2d at 355 (S.D.N.Y. 2007) (Swain, J.) (admitting expert opinion "based on Plaintiff's perceptions and certain other aspects of the record ... that Plaintiff's work assignments and termination were the product of such stereotyping");

---

[6]     FRE 704 (b) bars expert opinion on an ultimate issue in only one circumstance not applicable here, i.e. whether a defendant in a criminal case had the mental state constituting the element of a crime.

[7]     The Court found that an opinion regarding "unlawful" age discrimination as arguably inadmissible as an opinion "phrased in terms of inadequately explored legal criteria," but found any error to be harmless. *Id*. at 919-920.

*Runnels v. Texas Children's Hosp. Select Plan*, 167 Fed.Appx. 377, 2006 WL 189939, *

3 (5th Cir. 2006)("Appellants argue that [expert's] report should have been excluded

because it 'submits the ultimate question and seeks to answer the same....' The Rules of

Evidence, however, provide that 'testimony in the form of an opinion or inference

otherwise admissible is not objectionable because it embraces an ultimate issue to be

decided by the trier of fact.'").[8]

C.      Defendants Show There Are Triable Issues Of Fact Which, At Most,
        Influence The Weight To Be Given To Testimony

        "The Advisory Committee Notes accompanying Rule 702 observe that 'the

rejection of expert testimony is the exception rather than the rule." *EEOC v. Morgan*

*Stanley*, *supra*, 324 F.Supp.2d at 456, citing Fed. R. Evid. 702.  "Testimony that meets

the standards of Rule 702 is still subject to the rigors of 'vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof,' which

provide the 'traditional and appropriate means of attacking shaky but admissible

evidence." *Id.* at 456, *citing Daubert*, *supra*, 509 U.S. 579 at 596.

        The Supreme Court has held that even where -- unlike here -- an expert had

omitted relevant variables, such omission generally affects only the probative value and

not the admissibility of the analysis. *Bazemore v. Friday*, 478 U.S. 385, 400, 106 S.Ct.

3000, 92 L.Ed.2d 315 (1986) ("it is clear that a regression analysis that includes less than

'all measurable variables' may serve to prove a plaintiff's case.  A plaintiff in a Title VII

---

[8]      The cases Morgan Stanley cites are distinguishable.  In *Hygh v. Jacobs*, 961 F.2d 359,
364 (2d Cir. 1992), the proffered expert that police officer used excessive force should not have
been admitted, albeit harmless error, because he veered from the role of an expert and offered
conclusions about legal standards.  In *Berk v. Bates Advertising USA, Inc.*, 1998 WL 726030, * 2
(S.D.N.Y. 1998), the Court allowed plaintiff's accounting expert to testify at trial concerning that
defendant's stated reason for termination, financial pressure, was a sham as defendant was not
under financial stress, although he was limited from testifying that it was "pretext."  However,
here Morgan Stanley does not accuse Dr. Goldberg of offering legal opinions.

suit need not prove discrimination with scientific certainty; rather, his or her burden is to prove discrimination by a preponderance of the evidence.")

"The selection of the most relevant material to present is the sphere of academic experts, and it is unsurprising that different experts will highlight different research findings. Such differences may be properly presented to the jury by the parties at trial, and do not require or call for exclusion of the expert's testimony." *Hurst*, *supra*, 2007 WL 1599154 at * 2, *citing Howard v. Walker*, 406 F.3d 114, 127 (2d Cir. 2005) ("On cross-examination, an attorney is free to challenge an expert's methodology, … conclusions, and the bases for [those] conclusions.").

Morgan Stanley criticizes the research and scholarly literature that Dr. Goldberg cites. (Def. Br., pp. 26-29). Morgan Stanley also claims that before firing him, Mr. Gorman spent more time with Mr. Sullivan than explained by Dr. Goldberg in her report.[9] Morgan Stanley also asserts that Mr. Gorman had non-age based reasons for terminating plaintiff, and it tries to explain the context of his facially discriminatory comments about "energy," "adaptability," and "willingness to change." (Def. Br., pp. 14-16). In addition, Morgan Stanley asserts that "there is no evidence in the record to support that theory" that "there was some connection between the Woodshed Group and Mr. Gorman's decision to terminate Plaintiff's employment (Def. Br., p. 25), notwithstanding that defendants Brodsky and Kayne, acting outside their normal job

---

[9]    Although the amount of time Mr. Gorman spent with Mr. Sullivan before he fired him is a fact in dispute, it appears that Morgan Stanley and its own purported expert greatly exaggerate it. For example, Morgan Stanley and Dr. Frederick Oswald include within the time they spent together the very meeting in which Gorman fired Sullivan (which Morgan Stanley's expert coyly describes as "another meeting in Gorman's Westchester, New York office") and a meeting at a Merrill Lynch holiday party before Gorman even started with Morgan Stanley and was, accordingly, prohibited from discussing any business issues. (Def. Br., p. 11; Dr. Oswald report, Exh. G to Kagan Aff., at p. 21).

- 19 -

functions, re-wrote the positive performance evaluation that had been written by Mr.
Sullivan's boss, had him put in a "not promotable" box in the 9-box talent assessment and
provided that information to Mr. Gorman, and that that Mr. Gorman told Mr. Sullivan
that he could not offer him another position in the company because of that performance
evaluation.[10]  Morgan Stanley's arguments demonstrate nothing more than the fact that
there are significant fact issues to be tried.

At the most, Morgan Stanley's criticisms would go to the weight to be given to
Dr. Goldberg's testimony at trial, and not to the admissibility of the evidence set forth in
her report and incorporated into her Declaration.[11]  Naturally, we would point out that
because Morgan Stanley did not submit the rebuttal report of its purported expert, Dr.
Oswald, in connection with its Motion for Summary Judgment, that report should not be
considered by the Court in rendering its decision on the motion for summary judgment.
Per the Court's February 11, 2008 Order (Dkt. 25), Dr. Oswald's deposition is yet to be
taken, and will not be taken until after the Court renders a decision on the Motion for
Summary Judgment.[12]

---

[10]      See transcript of Deposition of Ed Sullivan, attached to Welzer Declaration in Opposition
to Motion for Summary Judgment (Dkt. 40), at p. 534:11-21.  The most succinct citations to the
record evidence on this point are found at pp. 6-7 and 10-12 of Plaintiff's Memorandum of Law
in Opposition to Defendants' Motion for Summary Judgment.

[11]      At times, Morgan Stanley's brief reads like a pre-written, off-the-shelf motion to preclude
an expert used in other cases.  We have not dwelled on certain boiler-plate issues.  However,
Morgan Stanley's discussion of methodology is countered by the cases cited herein at pages 9 to
12. Moreover, Morgan Stanley contradicts itself by claiming (incorrectly) that Dr. Goldberg was
retained "after the close of discovery" (Def. Br., p. 1); then, on page 4, Morgan Stanley indicates
that the discovery deadline had not passed.  Copies of the Orders accurately reflecting the
discovery end dates are attached collectively to the Welzer Declaration as Exhibit M.

[12]      A copy of the Memo-endorsed Order of Kevin N. Fox, U.S.M.J., dated February 11,
2008, extending the deadline for the deposition of the defense experts, is attached to the Welzer
declaration as Exhibit N.

## **CONCLUSION**

For the foregoing reasons, defendants' motion in limine to exclude the expert

report of Dr. Caren Goldberg should be denied.

Dated: New York, New York
       May 20, 2008

                                Respectfully submitted,

                                ZUKERMAN, GORE & BRANDEIS, LLP


                                By: _____S/_____
                                        John K. Crossman (JKC 7387)
                                        Frank C. Welzer (FCW 7159)
                                        875 Third Avenue
                                        Twenty-Eighth Floor
                                        New York, New York 10022
                                        212.223.6700
                                        *Attorneys for Plaintiff*
                                        *Edward M. Sullivan*