```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
EDWARD M. SULLIVAN,                   :
                                      :
                    Plaintiff,        :
             v.                       :    07-cv-0003
                                      :    Opinion & Order
JEFFREY BRODSKY, ERIC KAYNE, and      :
MORGAN STANLEY,                       :
                                      :
                    Defendants.       :
                                      :
------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONIC...
DOC #:
DATE FILED: 8/17/09

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Edward M. Sullivan brings claims of defamation, tortious interference with contract, and age discrimination against Defendants Morgan Stanley & Co. Incorporated ("Morgan Stanley"), Jeffrey Brodsky, and Eric Kayne  Defendants move for summary judgment on all claims. That motion is GRANTED.

**BACKGROUND**

The following facts are either undisputed or described in the light most favorable to the Plaintiff.

In 2005, Plaintiff was one of eight regional directors for Defendant Morgan Stanley. Early that year, Morgan Stanley undertook various efforts to strengthen compliance monitoring amidst an atmosphere of heightened regulation. In February 2005, Morgan Stanley met with the National Association of Securities Dealers to discuss specific actions being taken by Morgan Stanley in an effort to strengthen internal controls, compliance, and guardianship efforts. Among other actions, Morgan Stanley

1



committed that each of its managers would receive evaluations that reflected their performance in these areas. These efforts became a priority within the firm and were embodied in a program called "Project Woodshed" (the firm felt it had been taken to the "woodshed" by the NASD), which launched a number of initiatives intended to strengthen compliance and risk management within the firm.

In December of 2005, Plaintiff received a performance evaluation. Performance evaluations from Morgan Stanley were created through a "360-degree" evaluation process, collecting both self-reviews and reviews from colleagues, superiors, and inferiors. For Plaintiff's 2005 performance evaluation, Michael Burke, Plaintiff's supervisor, was the "Evaluation Director," responsible for synthesizing and delivering the review. Defendants Brodsky and Kayne were executives in Morgan Stanley's human resources department in 2005 and assisted Burke in his capacity as Evaluation Director. The record clearly indicates that the human resources department played a significant role in the collection and drafting of performance evaluations for managers. In Plaintiff's case, individual reviews were collected into a single "feedback report" that represented the "360-degrees" of Plaintiff's performance evaluation. Burke then formulated a summary based on the contents of the feedback report and his own evaluations. Burke's summary was reviewed by human resources, where several revisions were made and sent back to Burke. These revisions generally replaced positive evaluation comments with negative ones, particularly in regard to various "compliance" issues that human resources felt were not sufficiently emphasized in Burke's own summary and evaluation. Burke stated that he did not necessarily agree with the revisions, and so softened certain language before delivering the final, "360 degree" evaluation summary to Plaintiff. The

2

revisions made by human resources generally serve as the basis for Plaintiff's claims here.

Plaintiff received his 2005 performance review in mid-December of 2005. In February 2006, Paul Gorman was named the new president of the retail division of Defendant Morgan Stanley and announced that a new organizational structure would be put into place. After meeting with various senior executives over the course of his first month, Gorman decided to consolidate the company's eight "regions" into four "divisions." Gorman conducted interviews with each of the eight regional directors, including Plaintiff. Two of the regional directors were named division directors. The other two division directors were hired from Gorman's former firm. Another regional director was named Vice Chairman of another group at Morgan Stanley. Three of the regional directors, including Plaintiff, were terminated.

Plaintiff now brings a claim of age discrimination based on his termination, and claims of defamation and tortious interference based primarily on the revisions to Plaintiff's 2005 performance evaluation made by Kayne and Brodsky.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995).

3

The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

## DISCUSSION

### Defamation Claims

Plaintiff brings claims of defamation against Defendants Brodsky and Kayne. The Complaint states that comments included in Plaintiff's 2005 performance evaluation were defamatory and describes, "by way of example," eighteen allegedly false statements that were included in that evaluation. Plaintiff alleges that Defendants Brodsky and Kayne were responsible for these statements (and misleading omissions). (Comp. paras. 32-34.)

According to the allegations made in the Complaint, the Defamatory Statements were entirely encompassed in Plaintiff's performance evaluation. That evaluation was written in December, 2005, with the content of the final evaluation published and presented to Plaintiff on either December 15 or December 16, 2005.

Under New York law, an action for defamation must be brought within one year of the publication of the alleged defamatory statements. N.Y. C.P.L.R. § 215(3). A cause of action for defamation accrues when the defamatory statement is published or uttered. *See Ferber v. Citicorp Mortgage, Inc.,* No. 94 Civ. 3038(AGS), 1996 WL 46874, at *3 (S.D.N.Y. Feb. 6, 1996) (citing *Gregoire v. G.P. Putnam's Sons,* 298 N.Y. 119, 123 (1948); *Shamley v. ITT Corp.,* 869 F.2d 167, 172 (2d Cir.1989))

The Complaint in this case was filed on January 3, 2007. This places Plaintiff's claim for defamation outside the one year statute of limitations.

Plaintiff argues that the statute of limitations was tolled by the "Stand Still" agreement executed between the parties, dated October 12, 2006. (Welzer Decl., Ex. N.) New York General Obligations Law § 17-103 governs agreements such as this one and makes promises to waive, extend, or not plead the statute of limitations enforceable. However, that law specifies that agreements to toll are enforceable only "according to [their] terms." By the plain terms of the Stand Still agreement reached here between Plaintiff and Defendant, Plaintiff's claim for defamation was not tolled. The Stand Still agreement states:

> "In consideration of our [Plaintiff's counsel] providing the claim document to you, on behalf of Morgan Stanley, you [Morgan Stanley] agree that Morgan Stanley will 'Stand Still' until the later of: sixty [(]60) days from the date of this letter, or three (3) business days after you give written notice to the undersigned terminated this agreement.
>
> For purposes of this agreement, to 'Stand Still' means to take no legal action against our client, Mr. Sullivan…To 'Stand Still' is expressly understood to be without prejudice to any claim or defense which may be available to the Party Standing Still and any applicable statutes of limitation are tolled during the Stand Still period." (Welzer Decl., Ex. N.)

5

By its plain terms, this agreement places no obligations to "stand still" on Plaintiff. Nor does it toll or waive any statutes of limitations on Plaintiff's claims. The operative paragraph applies only to Morgan Stanley's obligation to "stand still," and the qualifying clause addressing prejudice and the tolling of statutes of limitations applies only to claims brought by Morgan Stanley.

The "Stand Still" agreement reached between the parties does not toll the statute of limitations on Plaintiff's claims of defamation.

Plaintiff further argues in opposition that, "the performance evaluation was published after it was disclosed to plaintiff on December 15, 2005, including that Gorman told Ed that he saw Ed's evaluation, and that he could not give Ed another position in the company because of Ed's evaluation." (Def. Opp'n, 26.) The Complaint, however, does not rely on any such allegation to state its claim for defamation. Nor does Plaintiff offer evidence here of any such additional defamatory statements published after the finalization and distribution of Plaintiff's performance evaluation on December 15 or 16, 2005. Moreover, even the example offered in opposition by Plaintiff does not describe an additional defamatory statement giving rise to an independent claim of defamation so as to bring Plaintiff's claims within the statute of limitations. Gorman's alleged reading of the performance review does not constitute a republication. Under New York's "single publication rule," the mass transmission of a defamatory communication constitutes a single wrong - "one composite tort which embraces all the acts involved in the printing and distribution of a newspaper or magazine to its millions of readers in many jurisdictions." *Ferber v. Citicorp Mortg.,* 94-cv-9038, 1996 WL 46874, at *4 (S.D.N.Y. Feb. 6, 1996) (citing *Sorge v. Parade Pubs., Inc.,* 247 N.Y.S.2d 317, 320 (1st Dep't 1964)

(stating that "[t]he so-called single publication rule safeguards the libelor [sic] from continuous harassment by a multiplicity of actions and minimizes some of the jurisdictional and legal problems which the person wronged might face in seeking redress")).

At most, Plaintiff has alleged – again, in his Opposition papers, without support – that a single publication has come under another's eyes. Exceptions to the "single publication" rule are few, and generally involve reissuance, republication, or rebroadcast of defamatory statements, so that the new publication amounts to a new and independent defamatory assertion. Where the initial publication is merely passed in front of another set of eyes, no new cause of action arises. In cases similar to this one, courts have rejected the proposition that a new defamation has occurred, for purposes of the statute of limitations or an independent cause of action. *See, e.g. David J. Gold, P.C. v. Berkin*, No. 00-cv-7940, 2001 WL 121940, at \*\*3-4 (S.D.N.Y. Feb. 13, 2001) (finding time-barred defamation claim based on allegedly false credit report even where defendants continued to report disputed debt to credit bureaus after initial publication); *Ferber*, 1996 WL 46874, at \*6 (finding that defendant's continued reporting to credit bureaus falls within the single publication rule); *Stockley v. AT & T Information Sys., Inc.*, 687 F.Supp. 764, 767-68 (E.D.N.Y.1988) (finding, in the context of an employer's report concerning the investigation of sexual harassment charges made against an employee, that defendant's repeated statements based upon such documents cannot give rise to a new cause of action); *Gray v. Millea*, 892 F.Supp. 432, 435 n. 3 (N.D.N.Y.1995) ("New York's 'single publication rule' prevents plaintiff from claiming that subsequent re-use of the statements made in these contexts could somehow have brought the material within a

year of his complaint."). This Court agrees with those rulings. Even if Plaintiff had presented evidence concerning publication of the performance evaluation to Mr. Gorman, the statute of limitations would still accrue from the original publication of that report on December 15 or December 16, 2005.

Therefore, Plaintiff's claims for defamation are time-barred. Defendant's motion to dismiss those claims is GRANTED.

### Tortious Interference

Plaintiff also brings claims for tortious interference against Defendants Brodsky and Kayne.

An at-will employee may maintain a tortious interference claim where it is established that a "third party used wrongful means to effect the termination such as fraud, misrepresentation, or threats, that the means used violated a duty owed by the defendant to the plaintiff, or that the defendant acted with malice." *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001); *Cohen v. Davis*, 926 F.Supp. 399, 403 (S.D.N.Y.1996). Normally, a co-employee, such as Brodsky or Kayne, would not qualify as a "third party" susceptible to a tortious interference claim. However, an action for tortious interference may be brought against a co-employee where that co-employee "acted outside the scope of [his or her] authority." *Albert*, 239 F.3d at 275 (citations omitted).

Plaintiff argues that Brodsky and Kane exceeded the bounds of their authority "by re-writing the performance evaluation in contradiction of Morgan Stanley's policies, and this was done to benefit the younger Taylor, who was a friend of Brodsky." (Def. Opp'n at 30.) Plaintiff, however, has not offered an evidentiary basis for a reasonable trier of fact to determine that Brodsky's and Kane's participation in Plaintiff's performance

8

evaluation was in fact a policy violation, that it otherwise exceeded the scope of their authority or employment, or that they were motivated by favoritism or malice.

Plaintiff argues that Kayne's and Brodsky's edits were "in contradiction of Morgan Stanley's policies" (Opp'n at 30), but has not pointed to any memorialization of those policies that reflects his characterization of them. Plaintiff presents testimony from Brodsky and Kayne explaining that the Evaluation Director (here, Burke) was in charge of the evaluation and had final approval over its content. However, Plaintiff presents no more than his own speculation that Brodsky's and Kayne's conduct usurped this role, or that even if it had, this conduct was a policy violation rather than merely a rare occurrence.

It is undisputed that Brodsky and Kane were executives in the Morgan Stanley human resources department, and that as such they "assisted with employee performance and development issues, which includes, among other things, drafting performance improvement plans, developing performance improvement goals and assisting with employee performance evaluations." (R. 56.1, 226-27.) The evidence clearly establishes that human resource employees, in particular Kayne, regularly participated in the formulation of performance evaluations. They were fully involved in a collaborative, "360 degree" process, and it was within the scope of their legitimate participation to propose or edit comments in order to amplify discussion of compliance, discipline, guardianship, or performance issues. (Kayne Dep at 196, 293-95; Sanchez Dep at 34; Pl. Dep. at 508.) It is undisputed that in 2005, Morgan Stanley made a firm-wide commitment to improving compliance efforts and internal risk controls. (R. 56.1, 36-40.) The human resources department was charged with ensuring that compliance issues were

properly reflected in the performance evaluation of Morgan Stanley managers. They did so in this case through revisions to Burke's report, some of which were incorporated into Defendant's final evaluation of Plaintiff, others of which were not. Plaintiff has provided no evidence suggesting that the revisions to his evaluation were anything more than the expected and wholly appropriate contributions of a human resources department mandated with reforming the firm's internal controls amidst an evolving regulatory atmosphere.

Plaintiff has not submitted sufficient evidence for a reasonable trier of fact to determine that Kayne's or Brodsky's participation in the drafting of his performance review was outside the scope of their employment as human resources executives at Morgan Stanley. As such, a claim for tortious interference cannot be maintained against them.

Moreover, even if Plaintiff had shown that Brodsky and Kayne acted outside the scope of their authority in revising the performance evaluation, the claim for tortious interference would nevertheless fail, since Plaintiff has not submitted evidence showing that there was "fraud, misrepresentation, or threats," that Brodsky and Kayne violated any duty owed to Plaintiff, or that they acted with "malice" in their revisions of Plaintiff's performance evaluation. *Albert*, 239 F.3d at 274. Plaintiff has asserted that he was replaced by Taylor,[1] a friend of Brodsky's, and that Brodsky forced out Plaintiff in order to help this friend. The record, however, does not support Plaintiff's assertion. Brodsky testified that he was friendly with Taylor in the manner of colleagues. Beyond this, there

---

[1] As discussed below, Plaintiff has also failed to provide evidence supporting the assertion that he was "replaced" by Taylor.

10

is no testimony that Brodsky engaged in any nefarious, malicious, or cronyistic conduct. There is only Plaintiff's own speculation.

Plaintiff has also failed to show that Brodsky's and Kayne's revisions resulted in Plaintiff's termination. The record indicates that this decision was taken by the incoming president, Gorman, after his own interview and assessment of Plaintiff. Plaintiff has simply not established a direct causal chain between the alleged conduct by these human resources executives and his eventual termination.

On each of these grounds, therefore, Plaintiff has failed to provide sufficient evidence for a reasonable trier of fact to find that Brodsky's and Kayne's tortious interference caused his termination from Morgan Stanley. Therefore, as to Plaintiff's claim for tortious interference, Defendants' motion for summary judgment is GRANTED.

## Age Discrimination

Plaintiff also brings claims of age discrimination against all Defendants.[2] The ADEA prohibits discrimination in employment on the basis of age against persons aged 40 or older. 29 U.S.C. §§ 623(a)(1), 631(a). Claims under the ADEA are governed by the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Tex. Dep't Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981);

---

[2] In this Circuit, individuals, as opposed to the employing entity, cannot be held liable under the ADEA. *See, e.g.*, Ajayi v. Department of Homeless Services. No. 08-cv-3649, 2009 WL 1704329, at *7 (S.D.N.Y. June 18, 2009) (collecting cases). Plaintiff's claims under the ADEA against Defendants Kayne and Brodsky are therefore DISMISSED.

11

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 194 -195 (2d Cir. 2007); *Leibowitz v. Cornell Univ.,* 445 F.3d 586, 591 (2d Cir.2006). First, the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. To achieve this prima facie case, a plaintiff must show membership in the protected age group, qualifications for the jobs at issue, an adverse employment action, and that the adverse action occurred under circumstances giving rise to an inference of discrimination. *Terry v. Ashcroft,* 336 F.3d at 137-38. Second, if the plaintiff succeeds in establishing a prima facie case of age discrimination, then the burden shifts to the defendant to articulate a non-discriminatory reason for the employee's rejection. Third, if the defendant meets this burden of production, the presumption drops away, *Fisher v. Vassar Coll.,* 114 F.3d 1332, 1337 (2d Cir.1997), and the plaintiff must prove by a preponderance of the evidence that the defendant's explanations were pretextual. *Id.* at 138.

Plaintiff was over forty (40) years old – he was fifty-five (55) years old - at the time of his termination. It does not appear to be disputed that he was qualified for the job in which he served prior to termination – Regional Director. Plaintiff suffered an adverse employment action when he was terminated. Plaintiff's termination, however, did not occur under circumstances giving rise to an inference of discrimination.

Plaintiff argues that because he was "replaced" by a younger employee - Todd Taylor (age 43) (Opp'n at 23) – he has raised an inference of discrimination and established a prima facie case. However, although Plaintiff argues that Mr. Taylor took over some of his responsibilities, Plaintiff has not provided a sufficient basis for

12

concluding that Mr. Taylor was his "replacement." Because Plaintiff was terminated during a period of company restructuring, his position was also terminated. Under the company's reorganization, eight "regions" were replaced by four "divisions." Mr. Taylor, who was the second highest-ranking manager in Plaintiff's Region, became Associate Division Director, the comparable position in the new "Division." The more accurate comparison for Plaintiff's Regional Director position is to the Division Director. Under the restructuring, two Regional Directors – Margaret Black (age 62) and William McMahon (age 49) – were named Division Director. The other two individuals named Division Director – Rick Skae (age 49) and Jerry Miller (age 44) – were hired away from Gorman's former firm. Rick Skae took over the Division that encompassed what was formerly Plaintiff's Region. An inference of discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-313, 116 S.Ct. 1307, 1310 (U.S. 1996); *see also D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 -196 (2d Cir. 2007). The age gap between Plaintiff and his "replacements" simply does not give rise to an inference of discrimination. Nor does any personnel decision affecting the eight Regional Directors suggest any age discrimination. Plaintiff therefore fails to establish a prima facie case of discrimination, and the claim may be dismissed on this ground.

However, even if such an inference were raised (if the Court were to determine, for example, that Mr. Taylor's assumption of certain duties formerly performed by Plaintiff was sufficient to show that Plaintiff had been replaced by a significantly younger employee) and a prima facie case of age discrimination were established, Defendants have offered a legitimate, non-discriminatory reason for Plaintiff's termination.

13

In 2005, Morgan Stanley was in the middle of a major restructuring, and, after meeting with the NASD, was resolved to create a more efficient and effective compliance system. The company was led in these efforts by a new president, Mr. Gorman. Gorman determined that the company would eliminate the eight "region" structure and form four larger "divisions" encompassing the old territories. After interviewing Plaintiff and accompanying him for half a day on a trip to the company's Boston branches, Gorman determined that Plaintiff lacked the leadership skills necessary for managing one of the larger Divisions. More specifically, Gorman did not believe that Plaintiff would be able to objectively implement various compliance and guardianship initiatives in light of his friendly relations with many inferiors. Since these initiatives had a high priority in the company's restructuring, Gorman determined that Plaintiff was not the best candidate to take over a Division Director position. (Gorman Dep. at 122-125, 141, 143-33, etc.) Defendant has met its burden to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. The burden is therefore on the Plaintiff to show that a reasonable trier of fact could believe by a preponderance of the evidence that these reasons were in fact pretextual.

Plaintiff has identified various items supposedly showing that Defendant's non-discriminatory explanation is pretextual. (Pl. Opp'n at 24-25.). However, despite various favorable characterizations made in argument, Plaintiff's evidence amounts merely to a collection of assertions, out of context statements, and stray remarks. The Court finds that this evidence, even when considered in combination, does not offer a basis for a reasonable trier of fact to conclude that Morgan Stanley's offered explanation for

14

Plaintiff's termination was pretextual and that Plaintiff's termination was in fact a result of discrimination.

Plaintiff first offers as evidence of pretext his performance evaluation, drafted by Burke and edited by Kayne and Brodsky. As discussed above, Plaintiff has submitted no evidence, beyond his assertions, that suggests that Kayne's and Brodsky's participation in drafting the evaluation was inappropriate or in violation of company policy. Further, Plaintiff has not established that the revisions made by Kayne and Brodsky were false or misrepresented the firm's views as to Plaintiff's performance in the area of compliance and guardianship. Nor has Plaintiff shown that even if the revisions were unauthorized or unwarranted, that they were fueled by or added fuel to age discrimination resulting in Plaintiff's termination.

Plaintiff also submits toward his showing of pretext two statements made by his superiors. Plaintiff has extracted and edited both. Read in context, they do not bear any relation to Plaintiff's termination and do not provide a reasonable basis for finding pretext or discriminatory conduct. Plaintiff cites, for example, an announcement by a former Morgan Stanley president who said that the company intended to "give young people the opportunity." (Pl. Opp'n at 13, PX 65, at MS 667, 669). This statement, already innocuous, is revealed as wholly irrelevant when read in context: "Again, it's not something I will mandate; it is something that I will encourage and work with management to ensure we give young people the opportunity, coming into the business, to find the right level of partners to support the experienced people." (PX 65 at MS 667.) Similarly, Plaintiff argues that he received an email from the company president, Gorman, stating "I intend to put in place a new organizational structure," that he then

15

forwarded that email to his boss, Burke, for clarification, and that "without hesitation," Burke "responded to Ed with the stark question: 'how old are you?'" (PX 89). However, the record demonstrates that the email concerning Plaintiff's age was sent in a different context, and that the response addressed to Plaintiff's "organizational restructure" inquiry made no reference to Plaintiff's age. (Kagan Supp. Aff. At Ex. 64.) In both instances, it appears that Plaintiff has mischaracterized the evidentiary record. Neither statement supports his argument that Morgan Stanley's explanation for his termination was pretextual.

Finally, Plaintiff also argues that two statements in particular demonstrate that his termination was a product of discrimination. Plaintiff points to a "joke" in which someone in a lunch line said that they should, "let the old guy [Plaintiff] get up to the front of the line." (Pl. Dep. at 105-106). Plaintiff also points to a remark made by a former Morgan Stanley president, who allegedly referred to Plaintiff as "old school." However, Plaintiff does not argue that these speakers were decisionmakers involved in his termination or that these comments in any way bore a nexus to that termination. The expert report submitted by Plaintiff does not bestow any greater relevance on these statements. Plaintiff's expert argues in part that these statements, among others, demonstrate that Morgan Stanley condoned an ageist atmosphere in the work place.[3] However, the expert's conclusions (and methodologies in reaching these conclusions) are simply too nebulous to add any substance to Plaintiff's characterization of the evidentiary record. Pointing to unrelated jokes made by nondecisionmakers does not give a

---

[3] Defendants have moved to exclude this report, challenging the expert's credentials and the propriety of her conclusions. That motion is DENIED. The Court has reviewed the report and has determined that its value is so negligible that it does not alter the Court's conclusions in resolving this motion for summary judgment.

16

reasonable trier of fact a basis to determine by a preponderance of the evidence that the reasons given by the actual decisionmakers involved in Plaintiff's termination were pretextual.

Plaintiff has failed to raise an inference of discrimination in the circumstances surrounding his termination and has failed to demonstrate that Defendants' explanation of his termination is in fact a pretext masking the real, discriminatory explanation. Therefore, Defendants' motion to dismiss Plaintiff's claims of age discrimination is GRANTED.

## CONCLUSION

Defendants motion for summary judgment is GRANTED as to all claims. The Clerk of Court is instructed to close this case.

**SO ORDERED:**

_____
Barbara S. Jones
**UNITED STATES DISTRICT JUDGE**

Dated:      New York, New York
            August 17, 2009

17